IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| LYNDON SOUTHERN INSURANCE COMPANY & INSURANCE COMPANY OF THE SOUTH, | )<br>)<br>)<br>) |
| Petitioners / Counter-Respondents, | )  Case No. 3:21-cv-00652<br>)<br>)  JUDGE CAMPBELL<br>)  MAGISTRATE JUDGE HOLMES |
| v. | )<br>) |
| JUPITER MANAGING GENERAL AGENCY, INC., | )<br>)<br>) |
| Respondent / Counter-Petitioner. | )<br>) |

## MEMORANDUM

This action comes before the Court on a Petition to Confirm Arbitral Award filed by Lyndon Southern Insurance Company and Insurance Company of the South (collectively "Lyndon" or "Petitioners") (Doc. No. 1) and Motion to Confirm Arbitration Award (Doc. No. 5). Lyndon seeks an Order confirming the Final Award of the arbitration panel in the amount of $2,250,344.53 and an award of fees and costs. (*Id*. at 5).

Respondent Jupiter Managing General Agency, Inc. ("Jupiter") filed a Counterclaim / Petition to Vacate Final Arbitration Award (Doc. No. 27) and Motion to Vacate Arbitration Award (Doc. No. 30). Jupiter seeks to vacate only the portion of the Final Award that awarded Lyndon $1,745,477.00. (*Id*. ¶ 30, 33). Jupiter filed a Motion for Oral Argument. (Doc. No. 48). The Motions are fully briefed.[1]

---

[1] Jupiter filed a Response to Lyndon's Motion to Confirm Arbitral Award (Doc. No. 33) and Lyndon filed a Reply (Doc. No. 41). Lyndon filed a combined Reply in Support of Motion to Confirm Arbitral Award and Response to Motion to Vacate. (Doc. No. 41). Lyndon also filed a Response in Opposition to Jupiter's Motion for Oral Argument. (Doc. No. 49).

The Court does not find oral argument necessary for the resolution of these motions. Accordingly, Jupiter's Motion for Oral Argument (Doc. No. 48) is **DENIED**. The remaining motions are addressed below.

### I. BACKGROUND

On June 22, 2015, Jupiter and Lyndon entered into the Program Administrator Agreement ("Program Agreement"), pursuant to which Jupiter agreed to serve as a program administrator for Lyndon. (Doc. No. 33-1). Jupiter also served as the claim manager for Lyndon. This aspect of their relationship was governed by the Claims Administration Agreement ("Claims Agreement"). (Doc. No. 30-2). Both Agreements included arbitration provisions.

The arbitration provision in the Program Agreement included requirements for choosing and paying for the arbitrators. (Doc. No. 33-1, Section 14). With regard to the manner of decision, the Program Agreement stated:

> The arbitrators shall be required to decide matters submitted to them based on the customs and usages of the business and in a spirit of equity rather than on technicalities or legal requirements. They shall interpret this Agreement as an honorable engagement, and their decision shall be final and binding upon the Parties. Judgment upon the final decision of the arbitrators may be entered in any court of competent jurisdiction.

(*Id.*).

When a dispute arose as to the amounts due under the Program Agreement, Lyndon sent Jupiter a written Demand for Arbitration. Lyndon asserted claims including: (1) unpaid premiums

---

In light of the disposition of Plaintiff's request for attorney's fees, the Court need not consider Jupiter's Motion to Strike Petitioners' Prayer for Attorneys' Fees (Doc. No. 31).

owed to Lyndon on the sale of policies; (2) reimbursement of Georgia attorney's fees as an allocated loss adjustment expense; and (3) prevailing party attorney's fees and costs, including expert costs under the Program Agreement indemnity clause.[2] (*See* Doc. No. 33-3).

Both parties were represented by counsel in the Arbitration. Consistent with the Program Agreement the parties agreed to a panel of three arbitrators – two party-arbitrator and an umpire (collectively the "Panel"). (Fisher Decl., Doc. No. 1-1, ¶ 6). Pursuant to a scheduling order entered by the Panel, the parties engaged in extensive discovery, including written discovery, document production, depositions, and the exchange of expert reports. (*Id*. ¶ 8).

On June 11, 2021, Lyndon filed a motion for partial summary disposition on its claim for unpaid premiums owed to Lyndon on the sale of policies and requested that the Panel order Jupiter to pay $1,745,477.00. (*See* Doc. No. 7). Jupiter responded to the motion and the Panel held oral argument. (*Id*.). Lyndon argued that there was no dispute of material fact that Lyndon had suffered losses of at least $1,745,477.00 as a result of Jupiter's negligence in the performance of its duties as a program administrator. (Doc. No. 42-2). Jupiter argued that summary disposition was not appropriate given the existence of comparative fault defenses under Fla. Stat. § 768.81 and the requirement of allocation pursuant to Fla. Stat. §§ 768.71 and 768.81. (Doc. No. 33-7). Jupiter argued that Lyndon failed to perform semi-annual audits required under Florida law, and failed to

---

[2] Two additional claims were resolved by the parties before the Panel issued the Final Award: (1) unpaid premiums owed to Lyndon on the sale of policies ($1,745,477.00); (2) reimbursement of Georgia attorney's fees as an allocated loss adjustment expense ($440,333.38); (3) prevailing party attorney's fees and costs, including expert costs under the Program Agreement indemnity clause ($510,950.14). (*See* Doc. No. 8; Doc. No. 33-3).

3

properly fund trust accounts, and committed a first breach of the agreement. (*See* Doc. No. 33 at 3). Jupiter argued comparative fault was a material disputed issue of fact. (Doc. No. 33-7 at 17).

The Panel found no genuine dispute as to any material fact, granted Lyndon's motion for partial summary judgment, and ordered Jupiter to pay Lyndon $1,745,477.00. (Doc. No. 7). The Panel stated:

> Petitioners' request that Respondent pay Petitioner $1,745,477 is granted. Partial summary judgment is an available remedy and appropriate where there is no genuine dispute as to any material fact on a claim, which is the case here with respect to Petitioner's claim to recover $1,745,477. Respondent shall pay Petitioners such amount by no later than July 9, 2021.

(*Id.*).

Jupiter again raised the issue of comparative fault in its pre-trial brief (Doc. No. 33-5) and in its Response to Lyndon's Pre-Hearing Statement.[3] In addition, in a joint email to the Panel, the parties raised the question of whether "Jupiter is able raise [comparative fault and mitigation of damages] (or any defenses) to payment of the $1.74 million at the final hearing."[4] (Doc. No. 33 at 5). Jupiter stated that it did not find it "necessary to make an argument as to this issue," it "simply need[ed] a clarification of the Panel's position…" (*Id.*). The Panel responded that "Jupiter's liability for the 8 errors as listed in the CPA Audit incurred from those errors ($1,745,477) has been finally determined by the Panel in its ruling on the Partial SJ motion. Any liability that relates solely to those errors and not to any of the remaining claims is irrelevant and, therefore, inadmissible." (*Id.*). The Panel added that Jupiter may "raise comparative fault, mitigation of

---

3    Jupiter's Response to Lyndon's Pre-Hearing Statement has not been filed in the Record.
4    Jupiter transcribed the email in the Memorandum (Doc. No. 33), but did not file the document.

4

damages, breach of contract, and any other defenses it has to liability for the remaining claims in dispute." (*Id.*).

The arbitration hearing took place on July 19, 2021. The Panel heard evidence only on the remaining claims, and on August 18, 2021, issued a Final Order awarding Lyndon $2,250,344.53. (Doc. No. 8). The award included $47,368.08 reflecting an overstated offset for underwriting reports (Issue #1); $457,499.45 in attorneys' fees that were part of Allocated Loss Adjustment Expenses (Issue #2), and $1,745,477 that was previously awarded on summary judgment in Panel Order No. 6. (*Id.*). The Panel denied Lyndon's request for attorneys' fees (Issue #3). (*Id.*).

Lyndon seeks to confirm the Final Award. Jupiter argues the Court should not confirm the Final Award and should vacate the portion of the Final Award awarded on summary judgment.

## II. STANDARD OF REVIEW

The parties agree this action is governed by the Federal Arbitration Act ("FAA"). 9 U.S.C. § 2; *see* Doc. No. 5 at 3; Doc. No. 33 at7); *Appalachian Reg'l Healthcare Inc. v. Beyt, Rish, Robbins Grp.*, 963 F.2d 373 (6th Cir. 1992) (unpublished table decision) (disputes arising out of contracts evidencing a transaction involving commerce are covered by the FAA).

Section 9 of the FAA permits parties to apply for an order confirming their arbitral award. 9 U.S.C. § 9. "The [FAA] expresses a presumption that arbitration awards will be confirmed." *Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 429 F.3d 640, 643 (6th Cir. 2005). To that end, "[w]hen courts are called on to review an arbitrator's decision, the review is very narrow; it is one of the narrowest standards of judicial review in all of American jurisprudence." *Samaan v. Gen. Dynamics Land Sys., Inc.*, 835 F.3d 593, 600 (6th Cir. 2016). The Sixth Circuit has instructed that "courts must refrain from reversing an arbitrator simply because the court disagrees with the result

5

or believes the arbitrator made a serious legal or factual error." *Solvay Pharm., Inc. v. Duramed Pharm., Inc.*, 442 F.3d 471, 476 (6th Cir. 2006). "[I]f a court can find any line of argument that is legally plausible and supports the award then it must be confirmed." *Id.* (quoting *Merrill Lynch, Pierce, Fenner & Smith v. Jaros*, 70 F.3d 418, 421 (6th Cir. 1995)).

The Federal Arbitration Act provides that a court may only vacate an arbitration in the following instances:

(1) Where the award was procured by corruption, fraud, or undue means;

(2) Where there was evident partiality or corruption in the arbitrators, or either of them;

(3) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter was not made.

9 U.S.C. § 10(a).

Jupiter contends the portion of the Final Award based on the award of partial summary judgment should be vacated because the arbitrators were guilty of misconduct in refusing to hear evidence of comparative fault, mitigation of damages, and timing of the breach and because the Panel showed a manifest disregard as to Florida's legal requirement to allocate fault.[5]

---

[5] In Jupiter's Reply to Petitioner's Response to Respondent's Motion to Strike Prayer for Attorneys' Fees (Doc. No. 44), Jupiter asserts for the first time that the Arbitrators "exceeded their powers or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." The Court has not considered this argument.

6

The standard for the Court's review of whether the arbitrator's decision constituted "misconduct" is "abuse of discretion." *Questar Cap. Corp. v. Gorter*, 909 F. Supp. 2d 789, 816 (W.D. Ky. 2012) (citing *Floyd Cty. Bd. of Ed. v. EUA Cogenex Corp.*, 198 F.3d 245, 1999 WL 1023704, at *2 (6th Cir. 1999) (unpublished table decision)). To meet this standard, a party seeking to vacate the arbitration award must show by clear and convincing evidence that the arbitrator had no clear basis for his decision. *Id*.

"Manifest disregard of the law" is a judicially created basis for vacating an arbitration decision that has been recognized by the Sixth Circuit. *See Coffee Beanery, Ltd. v. WW, LLC*, 300 F. App'x 415, 418 (6th Cir. 2008) (remarking that the court's "ability to vacate an award is almost exclusively limited to [the enumerated grounds], although it may also vacate an award found to be in manifest disregard of the law"). However, the Sixth Circuit has suggested that the "continued viability of the manifest-disregard standard is 'an open question'" after the Supreme Court's decision in *Hall Street Assocs. v. Mattel, Inc.*, 128 S. Ct. 1396, 1406 (2008). *Gunasekera v. War Mem. Hosp., Inc.*, 841 F. App'x 843, 846 (6th Cir. 2021) (citing *Samaan,* 835 F.3d at 600) ("Whether 'manifest disregard of the law' may still supply a basis for vacating an arbitrator's award as 'a judicially created supplement to the enumerated forms of FAA relief' after *Hall Street* is an open question"); *see also*, *Grain v. Trinity Health Mercy Health Servs., Inc.*, 551 F.3d 374, 380 (6th Cir. 2008) (citing *Hall Street*, 128 S. Ct. at 1406).

An arbitrator acts with manifest disregard if: "(1) the applicable legal principle is clearly defined and not subject to reasonable debate; and (2) the arbitrators refused to heed the legal principle." *Gunasekera*, 841 F. App'x at 846. "An arbitrator's 'mere error in interpretation or

application of the law is insufficient' to satisfy this 'very narrow standard of review.'" *Id*. (quoting *Merrill Lynch*, 70 F.3d at 421).

### III. ANALYSIS

Jupiter seeks to vacate the portion of the Final Award that represents the $1,745,477.00 related to the Panel's order on the Motion for Partial Summary Judgment on grounds that the Panel showed a manifest disregard of Florida law requiring allocation of fault and denied Jupiter the right to present evidence of comparative fault, mitigation of damages, and timing of the breach.[6] (Doc. No. 30, 7, 17).

Jupiter's assertion that the Panel is guilty of misconduct because it refused to consider evidence is patently contradicted by the record. Jupiter presented evidence on the issue of comparative fault and apportionment of liability in opposition to Lyndon's motion for partial summary judgment. (*See* Doc. No. 30, ¶¶ 11-12; Doc. No. 30-7). That the Panel precluded Jupiter from presenting this evidence at the Final Hearing because it was not relevant to any remaining claims, does not demonstrate misconduct on the part of the Panel.

By asserting that the Panel showed a manifest disregard of the law by failing to allocate liability, Jupiter effectively contends that the Panel committed a legal error in rejecting its comparative fault affirmative defense. Jupiter raised these arguments in response to Lyndon's Motion for Partial Summary Judgment. (*See* Doc. No. 30-7). Jupiter asserted summary judgment

---

[6] At the outset, the Court notes the irony of Jupiter seeking to vacate the arbitration award because the Panel allegedly acted in "manifest disregard of the law" when the parties, at one time, agreed that the arbitrators would "interpret this Agreement as an honorable engagement" and decide matters "based on the customs and usages of the business and in a spirit of equity rather than on technicalities or legal requirements." (Program Agreement, Doc. No. 33-1, Section 14.5).

8

was inappropriate because "[p]ursuant to Florida's Comparative Fault statute, the Arbitration Panel is required to allocate damages based on each parties' fault." (*See* Doc. No. 30-7 at 2, 14-17). Jupiter specifically argued that Lyndon was partly responsible for its own damages – "the undisputed evidence clearly puts fault on Lyndon both in its clear failure to investigate the issues, conduct its semi-annual review of the operations and invoke its audit rights." (*Id*. at 17).

Because the Panel did not issue a reasoned decision for its order on summary judgment, it is impossible to know for certain the Panel's rationale for awarding judgment to Lyndon.[7] "Arbitrators are not required to explain their decisions. If they choose not to do so, it is all but impossible to determine whether they acted with manifest disregard for the law." *Elec. Data Sys. Corp. v. Donelson*, 473 F.3d 684, 691 (6th Cir. 2007) (quoting *Dawahare v. Spencer*, 210 F.3d 666, 669 (6th Cir. 2000)). However, it is clear from the Panel Order that it rejected Jupiter's arguments for comparative fault and apportionment of liability when it granted partial summary judgment in favor of Lyndon. In doing so, it necessarily found no dispute of material fact as to Jupiter's liability or its asserted affirmative defenses as to the stated damages. (*See* Panel Order No. 6, Doc. No. 7 ("Partial summary judgment is an available remedy and is appropriate where there is no genuine dispute as to any material fact on a claim."); *see also*, Doc. No. 33 at 11 ("A

---

[7]  Although Jupiter now complains that the Panel did not issue a reasoned decision, it did not object to the form of Panel Order No. 6 during the arbitration. Indeed, although Jupiter found the Order and the Panel's position as to Jupiter's affirmative defenses "unclear," it did not request a reasoned decision, only "clarification of what would be allowed at the final hearing." (*See* Doc. No. 33 at 5 (quoting from Jupiter's Response to Lyndon's Pre-Hearing Statement)). Failing to object to the form of Panel Order No. 6 during the arbitration constitutes waiver. *See Murray v. Citigroup Glob. Markets, Inc.*, 511 F. App'x 453, 456 (6th Cir. 2013) (confirming arbitration award, finding movant never "sought, much less attained" a reasoned award and "has noone but himself to blame").

9

party moving for summary judgment must conclusively demonstrate that no genuine issue of material fact exists, and that the moving party is entitled to judgment as a matter of law") (citing *Jacobson v. R.J. Reynolds Tobacco Co.*, 2013 U.S. Dist. LEXIS 192320, *7 (S.D. Fla. 2013))).

Jupiter would have this Court assume the Panel ignored the evidence and/or the law and issued judgment in favor of Lyndon. As evidence of manifest disregard for the law, Jupiter cites the portion of the final order in which the Panel denies Lyndon's claim for attorneys' fees and costs, specifically its statement that "[c]ertain aspects of Lyndon's conduct in administering the relationship with Jupiter could have been better and may have eliminated or at least narrowed some of the issues that arose between the parties (e.g., under Fl. Stat. Section 626.8817(2), Lyndon should have 'at least semiannually, conduct[ed] a review of the operations of [Jupiter]', and '[a]t least one such review must be an onsite audit of the operations of [Jupiter]')." (*See* Doc. No. 8 at 11). Jupiter argues that this statement cannot be reconciled with the Panel's rejection of Jupiter's comparative fault defense. Jupiter asserts, "[i]t is inconceivable that the Arbitration Panel would think that Lyndon's failure to conduct audits under Florida law could have 'eliminated or at least narrowed' the issues – i.e. damages – yet granted the Motion for Partial Summary Judgment in total without apportioning any fault to Lyndon." (Doc. No. 33 at 16).

The Court disagrees. First, Jupiter assumes that the Panel's reference to narrowing the "issues that arose between the parties" necessarily refers to damages. "Issues" has broader meaning and could refer to any manner of conflict between the Parties. Second, "Florida Statute § 768.81 provides for reduction of damages in a negligence action for a plaintiff who has herself acted negligently, in proportion to the plaintiff's degree of fault." *Searcy v. R.J. Reynolds Tobacco Co.*, 902 F.3d 1342, 1358 (11th Cir. 2018). "Establishing comparative fault is akin to proving the

10

elements of negligence against the plaintiff. The defense of comparative fault is focused entirely on whether, and to what extent, the *plaintiff's* conduct was a legal cause of his own injuries." *Sowers v. R.J. Reynolds Tobacco Co.*, 975 F.3d 1112, 1136 (11th Cir. 2020) (emphasis in original) (internal citations omitted). The Panel could have found that, although Lyndon's conduct could have been better and it should have conducted a review of Jupiter's operations, Lyndon's conduct did not rise to the level of negligence or cause Jupiter's controller to make the transfers that resulted in the loss of the amount awarded on summary judgment.

Moreover, it would be improper for the Court to review the evidence and second guess the Panel's decision. *See Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001) ("[T]he arbitrator's 'improvident, even silly, factfinding' does not provide a basis for a review court to refuse to enforce the award."); *Solvay*, 442 F.3d at 476 ("Courts must refrain from reversing an arbitrator simply because the court disagrees with the result or believes the arbitrator made a serious legal or factual error.").

Given that there is a legally tenable basis for the Panel's decision, Jupiter has not demonstrated that the Panel consciously disregarded well-established law. *Solvay*, 442 F.3d at 476 (courts must confirm awards that are based on legally plausible argument). Finding no grounds to vacate the Final Award, the Award will be confirmed. *See* 9 U.S.C. § 9.

Plaintiff requests the Court award attorneys' fees incurred in this action as a sanction for Jupiter's "frivolous" Motion to Vacate. (*See* Doc. No. 40). Although Jupiter is not the prevailing party, the Court does not find an award of attorneys' fees warranted in this case.

## IV.  CONCLUSION

For the reasons stated, Lyndon's Motion to Confirm Arbitral Award (Doc. No. 5) will be **GRANTED** in part.  The Arbitration Award will be **CONFIRMED**, however, Plaintiff's request for an award of attorneys' fees will be **DENIED**.  Jupiter's Motion to Vacate Final Arbitration Award (Doc. No. 27) will be **DENIED**.

An appropriate Order will enter.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE